**Ken ACOSTA, et al.**

v.

**MASTER MAINTENANCE & CONSTRUCTION, INC., et al.**

**No. Civ.A.98–1065 A.**

United States District Court, M.D. Louisiana.

March 2, 1999.

---

Diane Adele Owen, Robert H. Schmolke, Robert H. Schmolke, P.L.C., Baton Rouge, Louisiana, Lewis Unglesby, Unglesby & Koch, Baton Rouge, Louisiana, Donald T. Carmouche, Victor L. Marcello, Talbot, Sotile, Carmouche, Marchand & Marcello, P.L.C., Gonzales, Louisiana, Edward Frank Strauss, III, Keogh, Cox & Wilson, L.T.D., Baton Rouge, Louisiana, Joseph Jerry McKernan, Michael V. Clegg, McKernan Law Firm, Baton Rouge, Louisiana, for plaintiffs.

Patrick A. Juneau, Jr., Thomas R. Juneau, The Juneau Firm, Lafayette, Louisiana, for Master Maintenance and Construction, Inc. and Lexington Insurance Co., defendants.

Emile C. Rolfs, III, Luis Arturo Leitzelar, Breazeale, Sachse & Wilson, L.L.P., Baton Rouge, Louisiana, F. Barry Marionneaux, F. Charles Marionneaux, Marionneaux & Marionneaux, Plaquemine, Louisiana, Reginald R. Smith, King & Spalding, Houston, Texas, for Georgia Gulf Corporation.

Ann E. Levine, Monroe & Lemann, New Orleans, Louisiana, Henri Wolbrette, III, Mcglinchey Stafford Lang, P.L.L.C., New Orleans, Louisiana, James M. Garner, Sher, Garner, Cahill, Richter, Klein, McAlister & Hilbert, L.L.C., New Orleans, Louisiana, for Payne & Keller Company, Inc.

Amy L. Baird, Hal Clayton Welch, Dwight C. Paulsen, III, Michael S. Sepcich, Lemle, Kelleher, Kohomeyer, Dennery, Hunley, Moss & Frilot, L.L.P., New Orleans, Louisiana, Leo Phillip Canova, Jr., Thomas C. Delahaye, Canova & Delahaye, Plaquemine, Louisiana, for Louisiana Intrastate Gas Company, LLC, Louisiana Intrastate Gas Corporation, and Lig Liquids Company, LLC.

Ronald A. Johnson, Salvadore A. Faso, II, Michael W. Mallory, Johnson, Johnson Barrios & Yacoubian, P.C., New Orleans, Louisiana, for Amoco Pipeline Company, Amoco Energy Trading Corp., Amoco Production Company.

Thomas E. Schwab, Barkley & Thompson, L.C., New Orleans, Louisiana, for X.L. Insurance Company.

H. Alston Johnson, III, Marshall M. Redmon, Virginia Y. Trainor, Phelps, Dunbar, L.L.P., Baton Rouge, Louisiana, for Primex, LTD.

Eric Alan Shuman, Elizabeth P. Blitch, McGlinchey Stafford Lang, P.L.L.C., New Orleans, Louisiana, for Hydrochem Industrial Services, Inc.

D. Russell Holwadel, Jesse R. Adams, Jr., Adams, Johnson & Oreck, New Orleans, Louisiana, for Associated Electric & Gas Insurance Services, LTD.

## RULING ON MOTION TO REMAND

JOHN V. PARKER, District Judge.

This matter is before the court on a motion to remand by plaintiffs, Kent Acosta, et al. The defendants, Georgia Gulf, Primex, Ltd. and X.L. Insurance Co., Ltd., oppose this motion. Oral arguments were held on January 15,1999. Removal jurisdiction is allegedly based on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201, et seq.

## I. PROCEDURAL HISTORY

This action arose from a mustard gas leak at the Georgia Gulf facility in Plaquemine, Louisiana on September 25,1996. The plaintiffs are Kent Acosta, who was working for a Georgia Gulf subcontractor during the leak, and his family, who alleges that they may have come into contact with the gas after Mr. Acosta returned home.[1] At the time of the incident that gave rise to these claims, the defendant, Georgia Gulf, was insured by the defendants, Primex, Ltd, ("Primex") and X.L. Insurance Company ("X.L."). Primex is a Barbados corporation and X.L. is a Bermuda corporation.

On October 11, 1996, the plaintiffs filed an action in the 18th Judicial District for the Parish of Iberville against several defendants including Georgia Gulf. Pursuant to Louisiana's Direct Action Statute, Primex and X.L. were also named as defendants. In October of 1998, the plaintiffs and other parties in similar suits amended their claims to assert an intentional tort claim against Georgia Gulf. Basically, plaintiffs' amended claims allege that the

release of mustard gas occurred over an extended period of time.

On December 23, 1998, the defendants, X.L. and Primex, removed this action to this court.[2] In their notice of removal, the defendants allege that the grounds for removal is a dispute over coverage between the foreign insurers and Georgia Gulf. The two foreign insurers claim that their insurance policies require that all coverage issues between Georgia Gulf and themselves be resolved through arbitration outside the United States. X.L.'s policy requires that all such disputes shall be conducted in London, England. Primex's contract with Georgia Gulf provides that coverage disputes shall be conducted in Barbados.

Primex and X.L. argue that because of the recent intentional tort allegations, a dispute has arisen between Georgia Gulf and themselves regarding coverage under their respective insurance contracts. Relying on 9 U.S.C. § 201 et seq., all three defendants argue that the insurance companies have a right to remove the entire case to this court because the arbitration clauses contained in their respective policies are subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The defendants assert that the subject matter of the plaintiffs' state court action is "related to" this agreement and likewise, is subject to removal.

Plaintiffs, however, disagree with the defendants' argument. They contend that removal was not proper, and this case should be remanded to state court for several substantive and procedural reasons. Plaintiffs argue that: (1) any dispute between Georgia Gulf and its insurers

---

1. In addition to this action, there have been more than 75 suits filed in state court with more than 2000 claimants. The actions were apparently consolidated in state court for discovery purposes on February 18, 1997. In addition, some of these suits were consolidated for trial purposes in October of 1998, and are set for trial beginning in March of 1999. The defendants have removed 68 of these cases to this court. Only the Acosta action is presently before the court.

2. Removal was attempted by the defendant Georgia Gulf on a prior occasion on the grounds of diversity. However, the defendant voluntarily consented to remand and the cases were ordered remanded. Since the first attempt at removal was based on diversity of citizenship, the first attempt is irrelevant to this discussion. *S.W.S. Erectors Inc. v. Infax, Inc.,* 72 F.3d 489 (5th Cir.1996).

was waived because the insurers knew of coverage disputes but continued to provide a defense; (2) removal in this case was not timely because it did not take place before the resolution or argument of substantive issues of law or fact by the state court; (3) removal of this case does not satisfy the requirements under 9 U.S.C. § 201, et. seq. ("the Convention Act") because there is no "relevant arbitration agreement … between the parties to the litigation"; (4) removal should not be allowed because not all defendants have consented to removal; and (5) in the alternative, the state court issues should be severed and remanded to state court.

## II. APPLICABLE LAW

In October of 1968, the United States Senate ratified the United Nation's Convention on the Recognition of Foreign Arbitral Awards ("the Convention").[3] The goal of the Convention was "to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries".[4] The United States and Barbados, Primex's domiciliary country, are signatories to the Convention.[5] Bermuda, X.L.'s domiciliary country, is bound by the Convention pursuant to the United Kingdom's Instrument of Accession and subsequent extensions to Bermuda.[6]

Under the provisions of the Convention, the United States may only avail itself of the benefits of the Convention against other signatories to the extent it agrees to bind itself.[7] Therefore, the Convention Act, 9 U.S.C. § 201, et seq., was enacted by Congress to implement the Convention and bind the United States to its terms.

Federal jurisdiction under these statutes is provided for in 9 U.S.C. § 203. It states:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of Title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

In addition to the jurisdictional grant provided in 9 U.S.C. § 203, Congress also provided a separate and distinct statute for removal of Convention cases from state court. 9 U.S.C. § 205 provides:

> "Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed."

According to the Fifth Circuit, the Congress, in creating and providing for original federal jurisdiction, also intended to provide the broadest removal statute in the federal code. The purpose behind such a liberal removal provision was to

---

**3.** See Senate Comm. on Foreign Relations, Foreign Arbitral Awards, S.Rep. No. 702, 91st Cong., 2d Sess. 5 (1970) reprinted in 1970 U.S.C.C.A.N. 3601, 3602.

**4.** See *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).

**5.** See Defendants' Notice of Removal, ¶¶ 3–4

**6.** See Defendants' Notice of Removal, ¶¶ 8; 11

**7.** Convention, Art. XIV

insure that there would be a uniform federal common law regarding international arbitral obligations.[8]

## III. DISCUSSION

### A. NO DISPUTE BETWEEN THE PARTIES

■ According to the Fifth Circuit, "an agreement falls under the Convention if the agreement: (1) is in writing; (2) is an agreement to arbitrate a dispute; (3) provides that arbitration will take place in the territory of a signatory to the convention; (4) arises out of a commercial legal relationship; and (5) is not entirely between citizens of the United States".[9] The two insurance contracts each contain an arbitration clause in which the parties (one of which is a foreign citizen) agree to arbitrate their disputes. Therefore, this court clearly has jurisdiction over a dispute between the parties to the insurance agreement.

■ Plaintiffs, however, argue that there is no real coverage dispute between the insurers and Georgia Gulf. They claim that Primex and X.L.'s allegations of newly discovered coverage disputes are "demonstratively untrue".[10] The plaintiffs assert that as early as December 1, 1996 approximately twenty cases were filed in state court alleging intentional torts. They argue that since the insurers knew of the intentional tort allegations in similar cases and the insurers have substantially participated in the state court litigation, the in-

surers have waived their right to removal. Also, the plaintiffs suggest the fact that Primex and Georgia Gulf were represented by the same attorney as late as December 9, 1997, demonstrates waiver of coverage disputes by Primex. They argue that as early as February 11, 1998, Primex and X.L. had basically admitted that they would not raise any coverage defense.[11] Plaintiffs contend that since the defendants did not take any action to reserve their rights for two years, they waived their right to compel arbitration.

Plaintiffs argument, however, is flawed. First, this case is not amongst the twenty cases filed in state court which plaintiffs claim allege intentional tort. The court will not consider the pleadings in a separate suit as notice of a coverage dispute in this suit.[12]

■ Second, waiver of an insurer's right to remove under the Convention must be explicit.[13] In this case, no evidence has been offered to show that the insurers explicitly waived their right to removal. The comments by the insurers' lawyer regarding waiver at a deposition on February 11, 1998, did not amount to an explicit waiver of an arbitrable coverage dispute; neither does the fact that one of the attorneys previously represented both the insurer, Primex, and the insured, Georgia Gulf. At the time these statements were made and the representation occurred, there was simply no coverage dispute because at that time, there was no intentional

---

8.  *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199 (5th Cir. 1991)

9.  *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144–45 (5th Cir.1985)

10.  See Plaintiff's Motion in Support of Remand, p. 3.

11.  The admission arises from a deposition held on February 11, 1998 where defendant's counsel, Mr. Rolfs, made the following comments: "There is no objection to coverage, period, end of sentence ... they waived [their right in the future to make a coverage objec-

tion] ... I think it's a moot point ... I'm telling you that there is no reservation as to coverage with respect to either one of these insurance carriers". Additionally, Mr. Koppus, attorney for XL, stated, "... XL does not object to covering the claim". Deposition of Tom Simon, p. 190–193

12.  This court notes that allegations of intentional tort in the twenty cases were extremely vague. The plaintiffs who made these allegations amended their pleadings in 1998 along with the other claimants to allege more specific facts.

13.  *McDermott International, Inc.* v, 944 F.2d 1199.

tort problem. These actions occurred prior to either the plaintiffs or the insurers having knowledge of any alleged intentional conduct on the part of Georgia Gulf. The plaintiffs' intentional tort claim did not become apparent until depositions in August of 1998. Plaintiffs did not amend their suit until September 21, 1998. Shortly thereafter, the insurers issued a reservation of rights letter to Georgia Gulf.[14]

Waiver is defined as the intentional relinquishment of a known right.[15] There is no evidence submitted which proves that the insurers intentionally released their right to arbitrate. The insurers' attorney could not explicitly waive an unknown arbitrable coverage issue that was not discovered until August 1998. Plaintiffs have not provided the court with any evidence to demonstrate that either X.L. or Primex knew or should have discovered through investigation that the plaintiffs had such a potential claim.

## B. TIMELINESS OF THE REMOVAL

In an argument similar to the waiver claim, plaintiffs contend that the removal of this case was not timely. They argue that the provision in 9 U.S.C. § 205 which states "at any time before trial" means any time "before the resolution of any substantive issues of law or fact by the state court or even the argument of such issues". As authority plaintiffs cite several federal decisions.[16] The plaintiffs assert that the "most important example" of the state court addressing the merits issue is when the plaintiffs amended their pleadings to allege intentional torts. In addition, they reference numerous exceptions and a motion to exclude expert testimony by Master Maintenance as having been allegedly briefed and argued before the state court.

■ This court does not agree with plaintiffs' interpretation of the phrase "at any time before trial". Most of the case law upon which plaintiffs rely was decided before the turn of the century, and those cases arise under the original 1875 removal statute. Only one case pertains to removal under the Convention, *Pan Atlantic Group, Inc. v. Republic Ins. Co.*, 878 F.Supp. 630 (S.D.N.Y.1995). This court finds the reasoning of the *Pan Atlantic* court unsound because that court applied the rule of narrowly construing removal statutes which clearly should not apply to removal under the Convention.[17] While such a narrow approach is mandatory under the general removal statute, 28 U.S.C. § 1441, it does not apply to removal under the Convention. Quite the contrary, according to *McDermott*, supra, 9 U.S.C. § 205 should be construed broadly and in favor of the right of foreign parties to remove.[18]

■ This court is persuaded that the phrase, "any time before trial", as used in 9 U.S.C. § 205, means that removal may occur at any time before an adjudication on the merits.[19] The plaintiffs have cited no ruling in the state court which has resulted in a final determination of the plaintiffs' claims. The act of amending the petition and the other petitions was not

---

14. Although plaintiffs claim that Georgia Gulf must file a separate cross-claim or third party demand for there to be a legitimate dispute of coverage, the court finds that action unnecessary and contradictory to the intent of the Convention and its implementing acts.

15. *Steptore v. Masco Construction Company, Inc.* 643 So.2d 1213 (La.1994).

16. *Pan Atlantic Group Inc. v. Republic Insurance Co.*, 878 F.Supp. 630 (S.D.N.Y.1995); *Alley v. Nott*, 111 U.S. 472, 475–76, 4 S.Ct. 495, 496–97, 23 L.Ed. 491 (1884) (after argument on demurrer on the ground that no cause of action has been stated). *Sun Sales*

*Corp. v. Block Land, Inc.*, 316 F.Supp. 379 (E.D.Pa.1970) ; *Rothner v. City of Chicago*, 879 F.2d 1402 (7th Cir.1989) and *Scharff v. Levy*, 112 U.S. 711, 5 S.Ct. 360, 28 L.Ed. 825 (1884).

17. *Pan Atlantic Group, Inc.*, 878 F.Supp. at 637.

18. *McDermott International, Inc.*, 944 F.2d at 1213.

19. See *Beighley v. FDIC*, 868 F.2d 776, 782 (5th Cir.1989) (the right of removal is not lost by actions in state court short of proceeding to an adjudication on the merits.)

dispositive of the suit nor did it result in an adjudication on the merits. For this reason, the plaintiffs' argument regarding the timeliness of the defendants' removal is not persuasive.

## C. SUBJECT MATTER OF CASE RELATES TO AN ARBITRATION AGREEMENT

■ Plaintiffs' next argument challenges whether the insurers have a right under 9 U.S.C. § 205 to remove "the entire action" to federal court. They claim that under 9 U.S.C. § 205, their state court action does not "relate to" an arbitration agreement under the Convention. The phrase "relate to", according to plaintiffs, requires the parties in a state court action to be signatories to the arbitration agreement in dispute. Plaintiffs contend that their claims against X.L. and Primex only arise under the Louisiana Direct Action Statute, and not under any provisions of the contract.[20]

In support of their argument, plaintiffs rely upon the case of *Marathon Oil Co. v. Ruhrgas*, A.G 115 F.3d 315 (5th Cir.1997) vacated on other grounds, 145 F.3d 211 (5th Cir.1998).[21] Although *Marathon* was vacated on other grounds, this court considers the decision as persuasive and useful in its determination of when a state court action "relates to" an arbitration agreement under the Convention.

In *Marathon*, Marathon Oil Company, Marathon Petroleum Norge, a subsidiary of Marathon Oil, and Marathon International Oil, an international affiliate of Marathon Oil, sued Ruhrgas, A.G., a German Gas supplier, for several business tort claims. The basis of plaintiffs' claim was that the defendant fraudulently induced them to invest in Marathon Petroleum Norway (MPN), a Marathon Oil subsidiary. MPN, although not a party to the suit, was subjected to a binding arbitration agreement with the defendant in Europe. Because of this arbitration agreement, Ruhrgas removed the entire action to federal court claiming that the subject matter of that suit related to an arbitration agreement under the Convention. The court, after considering various factors, held that the arbitration agreement was not relevant to the plaintiffs' action and remanded the case to state court.

Despite plaintiffs' contention in this case, *Marathon* does not stand for the proposition that courts should uniformly deny jurisdiction to all parties who are not signatories to an arbitration agreement. Instead, the *Marathon* court considered a number of factors in determining whether the subject matter of a state action is related to the arbitration agreement.[22]

■ In the unpublished opinion of *Ieyoub v. The American Tobacco Co.*, No. 97–1174(JTT) W.D.La. Sept 11, 1997, Judge Trimble furnishes a convincing analysis of the *Marathon* case and the factors which it considered in its holding.[23] The factors described are:

20. Plaintiffs also claim that the McCarran–Ferguson Act "preserves state statutes such as Direct Action Statutes, excepting them from the usual'rules of preemption". The plaintiffs argument is misplaced. While the McCarran–Ferguson Act prohibits preemption of a state's insurance regulation, a dispute between an insurer and its insured regarding terms of their contract is not "the business of insurance". *See Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 230, 99 S.Ct. 1067, 1082, 59 L.Ed.2d 261 (1979).

21. Plaintiffs also cite In the *Matter of Talbott Big Foot, Inc.*, 887 F.2d 611 (5th Cir.1989) and *Zimmerman v. International Companies and Consulting, Inc.*, 107 F.3d 344 (5th Cir. 1997). These cases, however, are irrelevant to the issue before this court. Neither of these cases deal with whether this court has jurisdiction or a right of a defendant to remove under the Convention. Both of these cases are Federal Arbitration Act Cases which stand for the proposition that a direct action plaintiff can not be compelled to arbitrate his direct action claim against the insurance company when he is a non-signatory to the arbitration agreement.

22. *Marathon Oil Co.*, 115 F.3d at 321

23. In *Ieyoub*, the Attorney General of the State of Louisiana Richard Ieyoub filed suit against numerous tobacco manufactures, tobacco distributors, and their associates seeking to recover costs incurred by the state for providing health care to individuals with to-

"(1) whether the plaintiffs themselves were signatories to the arbitration agreement; (2) whether the plaintiffs were seeking damages under the contract containing the allegedly relevant arbitration agreement; (3) whether there was any contractual relationship at all between the plaintiffs and the defendant; and (4) whether the plaintiffs were seeking redress for wrongs done to a signatory of the agreement".[24]

■ The plaintiffs in this case, like the plaintiffs in Ieyoub, are not signatories to the agreement, and they are not seeking redress for a wrong done to a signatory of the agreement. However, the plaintiffs are seeking damages directly from the insurers under contracts issued to their insured, the alleged tortfeasor. Furthermore, Louisiana's Direct Action Statute is construed as creating a contractual relationship which inures to the benefit of any and every person who might be injured by the insured.[25] Without the insurance contracts, plaintiffs have no claim against either of the insurers, and the dispute to be arbitrated directly impacts their possible recovery from those insurers. When these facts are considered together with the Fifth Circuit's holding that 9 U.S.C. § 205 was intended by Congress "to channel [ ] Convention Act cases into federal courts", this court has no hesitation in concluding that plaintiffs' state action is "related to" an arbitrable dispute under the Convention, and that removal of the entire action was proper.[26]

## D. CONSENT BY ALL DEFENDANTS

Plaintiffs' last argument is that this case should be remanded because not all defendants have consented to removal. More specifically, they argue that in every case removed by the defendants at least one of the following parties have been named: Louisiana Intrastate Gas Company, L.L.C.; LIG Chemical Company; Equitable Resources, Inc.; and Associated Electric Gas Insurance Services, Ltd. (collectively the "LIG defendants"). The plaintiffs contend that when the defendants approached the LIG defendants and requested consent to removal, the LIG defendants' refused. According to the plaintiffs, when the LIG defendants refused to sign the consent to removal, the defendants/insurers altered the notice of removal so as to indicate that the LIG defendants have settled. Plaintiffs suggest that the only agreement made between themselves and the LIG defendants was as to the gross amount to be paid. It is the contention of plaintiffs that there were no specific allocations made to the individual plaintiffs, and that plaintiffs have not signed off on the agreement. Therefore, plaintiffs assert that the LIG defendants have not officially settled and should not be considered as a nominal party for purposes of removal.

The defendants, however, contend that under 9 U.S.C. § 205 consent of all the defendants is not required. In the alternative, they argue that if this court does require consent of all defendants, the consent of the LIG defendants is not required because they are only nominal defendants. They claim that although the plaintiffs have not signed the agreement to settle, the LIG defendants, for all practical purposes, are no longer a party to the suit. Therefore, their consent was not required. Lastly, they assert that if the LIG defendants are not deemed nominal defendants then the "no-position letter" by George D. Kappus, attorney for the LIG defendants, should be considered as consent.

24. *Ieyoub,* at 7.

25. *Shockley v. Sallows,* 615 F.2d 233, 238 (5th Cir.) cert. denied, 449 U.S. 838, 101 S.Ct. 113, 66 L.Ed.2d 44 (1980).

26. *McDermott Int'l Inc.,* 944 F.2d at 1208.

bacco-related illnesses. When the Attorney General sought to amend his petition to include over a hundred insurance companies under Louisiana's Direct Action Statute, the defendant-insurers, who were part of the Institute of Lloyd's of London, sought removal under the Convention.

## 1. Consent of all defendants

The dispute over whether consent of all defendants is required comes from the differing interpretation by the parties of the phrase in 9 U.S.C. § 205 which states: "the defendant or the defendants may ... remove such action ..." Plaintiffs argue that this wording should be given the same construction which is given to identical language found in 28 U.S.C. § 1441(a).[27] Under § 1441(a), the jurisprudence is clear that all defendants to an action must join in removal, even if the federal question at issue impacts only one of the defendants.

The defendants, however, suggest that since the statutes implementing the Convention were to be given a broad construction, defendants such as the LIG group, who are without a right to removal, are not required to consent. They charge that any other interpretation of 9 U.S.C. § 205 would defeat the purpose of the Convention.

■ As stated above, 9 U.S.C. § 205 is not given the same strict construction as cases removed under 28 U.S.C. § 1441.[28] However, the Congress is presumed to have intended similar terms in its legislation to have similar meaning.[29] The wording in 9 U.S.C. § 205 and the wording in 28 U.S.C. § 1441 are identical in that both allow removal by "the defendant or defendants". Plaintiffs' argument is certainly plausible.

The Fifth Circuit had occasion to consider the Foreign Sovereign Immunities Act ("FSIA") in *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371 (5th Cir. 1980). Pursuant to the FSIA, 28 U.S.C. § 1441(d) specifically grants the right of removal to federal court to "the foreign state". Considering the Congressional

purposes of the Act, the court concluded that a foreign state has the right to remove any action in which it is a defendant regardless of lack of consent by any other party defendant.

Subsequently, in *McDermott*, the court recognized the similar purpose of the two acts. In both acts "Congress deliberately sought to channel cases ... away from the state courts and into federal courts ... for the purpose of assuring a unitary federal jurisprudence." That purpose is best served by construing § 205 in a fashion that allows a foreign insurer to remove a case arising under the Convention Act without the consent of any other party defendant.

■ As this court has already observed, supra p. 703, and as the discussion in *McDermott* makes plain, 944 F.2d at pp. 1211 and 1212, the purpose of channeling all Convention Act cases into federal court is to insure development of a uniform body of federal law. It is self-evident that the courts of the fifty states of this Union are unlikely to develop a uniform body of federal law regarding international arbitration agreements.

The purpose of the Convention Act to foster international contracts is furthered by assuring a foreign business dealing with an American business, that without regard to which of the states where that business may be located, the foreign business will have access to that uniform body of federal law in the event of a dispute relating to an arbitration agreement.

When a foreign insurer issues a policy containing such a clause to an American business, it cannot predict what other party defendants it might be grouped with in

---

**27.** 28 U.S.C. § 1441(a) **Actions removable generally**

    (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, **may be removed by the defendant or the defendants,** to the district court of the United States for the district and division

    embracing the place where such action is pending.

**28.** *McDermott International, Inc.,* 944 F.2d at 1213

**29.** *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.,* 522 U.S. 479, 118 S.Ct. 927, 939, 140 L.Ed.2d 1 (1998).

future litigation. To condition the foreign insurer's access to the uniform body of federal law upon the whim of unknown and unknowable future party defendants is to completely thwart the very purposes of the Convention Act. Foreign businesses who understand that their access to federal courts can be denied by one local party defendant are likely to think carefully before contracting with an American business.

A construction of § 205 proposed by plaintiffs which requires consent of all defendants would constitute an obstruction to the free flow of foreign trade, a consideration which is not involved in removals under the general removal statute. Since the purpose of the Convention Act is to encourage foreign trade, such a construction should not be adopted, despite the use by Congress of the magic words, removal "by the defendant or the defendants" in § 205.

Thus, this court concludes that the jurisprudence under 28 U.S.C. § 1441(a) as to the meaning of "the defendant or defendants" has no application to that phrase as used in 9 U.S.C. § 205.

## 2. Nominal defendants

Assuming that the court's holding relative to the necessity for consent of all defendants is in error, the defendants assert that the LIG defendants should be considered as nominal defendants because of the previous settlement agreements.

■ The consent of a nominal defendant is not required for removal. The test set out by the Fifth Circuit for whether a defendant is a nominal defendant is "whether in the absence of the [defendant], the Court can enter a final judgment con-

sistent with equity and good conscience which would not be in any way unfair or inequitable to the plaintiff".[30] Defendants who have settled are nominal defendants whose consent to removal is unnecessary.[31]

Plaintiffs concede that they are attempting to or have attempted to settle with the LIG defendants. However, they argue that the settlement, at the time of removal, was unenforceable. They claim that under *Erdey v. American Honda Co.*, a prior opinion of this court, there must be an enforceable settlement agreement signed by the plaintiffs in order for the settling defendant to be viewed as a nominal defendant.[32] They argue that the Fifth Circuit, in *Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689 (5th Cir.1995), confirmed Erdey's requirement of an enforceable settlement agreement.

Plaintiffs analysis of both *Erdey* and *Vasquez*, however, is marred. This court in *Erdey* did not require that there be an enforceable settlement agreement. *Erdey* simply stated that "where [a] plaintiff by his voluntary act has definitely indicated an intention to discontinue the action as to the non-diverse defendant, [he] has indicated that he no longer desires to dictate the forum and the case then becomes removable".[33] The *Vasquez* court did in fact confirm this holding when it stated the test is "whether there has been a voluntary act of the plaintiff that effectively eliminated the non-diverse defendant from the case".[34]

■ In this case, counsel for plaintiffs have signed a settlement letter. The letter states that the LIG defendants shall pay "$11 million to resolve all claims brought against the LIG entities and their insurer by both plaintiffs . . . and Georgia

---

**30.** *Tri–Cities Newspapers, Inc. v. Tri–Cities Printing Pressmen and Assistants' Local 349,* 427 F.2d 325, 327 (5th Cir.1970).

**31.** *Bradley v. Maryland Casualty Co.,* 382 F.2d 415, 419 (8th Cir.1967).

**32.** 96 F.R.D. 593 (M.D.La.1983), modified on other grounds, 558 F.Supp. 105 (M.D.La. 1983)

**33.** 96 F.R.D. at 599.

**34.** *Vasquez,* 56 F.3d at 693; See also, *Martineau v. ARCO Chemical Co.* 25 F.Supp.2d 762 (S.D.Tex.1998) (confirming consent was not required from a settling defendant when counsel for settling defendant had signed a settlement letter, informed the court of a settlement agreement in principle and agreed upon consummation of settlement).

Gulf. This payment is to be placed in an interest bearing account to be used 'exclusively as a dollar-for-dollar settlement and/or judgment credit in favor of Georgia Gulf ... the monies are to remain in escrow until the conclusion of the litigation ... upon severance of LIG from the pending suits against Georgia Gulf, neither Georgia Gulf nor the plaintiffs will seek to include LIG on the verdict form at any trial of this litigation.' " [35]

Plaintiffs have also filed a joint motion in state court to sever the LIG defendants from this suit. In this agreement, the plaintiffs state that they "have reached an agreement in principle for settlement". They also state that they "will terminate the involvement of LIG group in all matters arising out of the chemical exposures that are the subject of this consolidated action".[36]

In this case, plaintiffs are attempting to "have their cake and eat it, too". They cannot argue that there is no settlement between the LIG defendants and themselves, and at the same time make no attempt to disavow or challenge the settlement. Without regard to whether plaintiffs have signed a formal settlement document in this case, they have agreed, through their attorneys, to a dollar amount and have moved to sever the LIG defendants from the case. Under the test set out above, these actions constitute "voluntary acts" by plaintiffs to "effectively eliminate" the LIG defendants from this case. For these reasons, this court considers the LIG defendants to be nominal defendants and thus not required to consent to the removal of this case.

## E. SEVERANCE OF NON–COVERAGE ISSUES

Lastly, plaintiffs argue in the alternative that this court should severe all non-coverage state issues, and remand all such issues to state court. Plaintiffs urge that this court follow the decision of *Acme Brick Co. v. Agrupacion Exportadora de Maquinaria Ceramica.*[37] In *Acme Brick*, the plaintiffs brought an action against the defendant Agrupacion for breach of contract and against the defendant American Home for payment under a payment and performance bond. American Home then filed a cross claim against Agrupacion requesting indemnification under a separate indemnity agreement which provided that the parties would arbitrate their claims. Agrupacion then removed under the Convention Act and on the basis of federal question jurisdiction, 28 U.S.C. § 1441. After the court dismissed American Home's indemnification claim without prejudice in favor of arbitration, it decided that there was no longer any federal question issue remaining. The court thus remanded the breach of contract claim to state Court.[38]

██ This court disagrees with the analysis used in *Acme Brick*. In *Acme Brick*, the court required an independent basis of jurisdiction in order to maintain an action under the Convention.[39] However, under 9 U.S.C. § 203, federal courts clearly have original jurisdiction over the entirety of any action which falls under the Convention. As stated in the discussion, supra, this "entire action" "falls under the Convention". Thus, this court has jurisdiction over the entire case under 9 U.S.C. § 201 et seq., including the alleged state law claims, and cannot sever those claims.[40]

## CONCLUSION

Accordingly, for the reasons assigned, the motion to remand by the plaintiffs

---

**35.** See Defendant Georgia Gulf's Opposition to Plaintiffs Motion to Remand, Exhibit "J".

**36.** See Defendant Georgia Gulf's Opposition to Plaintiffs Motion to Remand, Exhibit "L".

**37.** 855 F.Supp. 163 (N.D.Tex.1994)

**38.** *Id.*

**39.** *Id.*

**40.** See *Ieyoub* at p. 11–14.

Kent Acosta, et al. (doc. no. 3) is hereby **DENIED.**