Jing CARINGAL

v.

KARTERIA SHIPPING, LTD., et al.

Civil Action Nos. 99–3159, 99–3161, 99–3632 and 00–1045.

United States District Court, E.D. Louisiana.

July 5, 2000.

Richard J. Dodson, David Vidrine, Kenneth H. Hooks, III, Dodson & Vidrine, Baton Rouge, LA, Michael A. Colomb, William Steven Mannear, Poynter, Mannear & Colomb, Baton Rouge, LA, Gordon R. Crawford, Gordon R. Crawford & Associates, Gonzales, LA, for Plaintiff.

David B. Lawton, Terriberry, Carroll & Yancey, New Orleans, LA, Daniel Edward Knowles, III, Bernard H. Ticer, William Breen Hidalgo, Jean Paul Picou Overton, Burke & Mayer, New Orleans, LA, John Barr Gooch, Jr., Patrick Edward O'Keefe, Jonathan W. Thames, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, Scott Rodgers Wheaton, Jr., David Boies Sharpe, Lugenbuhl, Burke, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, Richard Allan Chopin, John Scott Bair, Chopin, Wager, Cole, Richard, Reboul & Kutcher, LLP, Metairie, LA, Joseph Dwight Leblanc, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, James H. Roussel, Thomas Kent Ledyard Morrison, Phelps Dunbar, LLP, New Orleans, LA, John Carter McNeese, Habans, Bologna & Carriere, New Orleans, LA, for Defendants.

### ORDER AND REASONS

BERRIGAN, District Judge.

Plaintiff Milagros A. Velasquez has moved the Court to remand Civil Action No. 00–1045 to the 23rd Judicial District Court for the Parish of St. James, State of Louisiana. For the reasons explained below, the Court GRANTS Mrs. Velasquez's motion and thereby REMANDS the case to state court.

### I. FACTS

Four interrelated cases, Civil Actions 99–3159, 99–3161, 99–3632, and 00–1045, are now before this Court. As specified by Local Rule 3.1.1E, all of these actions have been transferred from various sections and consolidated in this Court. It is necessary to explain the general facts and circumstances of these cases before moving forward with the matters currently before the Court.

All of these actions stem from an explosion on the high seas aboard the M/V KARTERIA on August 25, 1999. The explosion occurred while the ship was carry-

ing possibly volatile mineral cargo [1] loaded at Convent, Louisiana.[2] The explosion resulted in the deaths of two crewmen—Benigno Velasquez, Mrs. Velasquez's husband, and Enriquito Detoyato [3]—and serious injury to another—Jing Caringal.

Mr. Caringal promptly filed suit in the 23rd Judicial District Court for the Parish of St. James against the M/V KARTERIA and its owners and operators; Koch Carbon, Inc. ("Koch"), the vessel's chatterer; Universal Minerals, Inc. ("Universal"), the vessel's sub-charterer and cargo shipper; American Iron, the manufacturer of the ship's cargo; and IC RailMarine, the stevedoring company that loaded the ship's cargo. Koch, the ship's charterer, promptly removed the action to this Court under the Convention on the Recognition of Foreign Arbitral Awards, 9 U.S.C. § 201, et seq. ("Convention Act"), as related to an ongoing arbitration among some of the parties in London. This action, 99–3159 ("Caringal action"), remains on this Court's docket.[4]

Thereafter, the Karteria parties filed Civil Action 99–3161 ("assignment case") in this Court against the cargo parties. The Karteria parties allegedly have settled all of Mrs. Velasquez's claims and obtained from her a full assignment of any rights against any of the other parties. The Karteria parties filed the assignment case against the cargo parties, allegedly under its unlimited assignment of rights, to recover the amounts paid to Mrs. Velasquez in settlement.

The Karteria parties then filed Civil Action 99–3632 ("limitation action"), a maritime limitation of liability action under Federal Rule of Civil Procedure 9(h) and Rule F of the Supplemental Rules for Admiralty and Maritime Claims. Before transfer and consolidation of the case, Section "J" ordered all claims against the Karteria parties to be filed by August 25, 2000. Caringal filed a motion to lift the limitation, but the Court denied the motion. Accordingly, the action remains before this Court, and parties have until August 25 to file claims. Currently, only the cargo parties have entered appearances in the limitation action: American Iron has filed for intervention, and IC RailMarine has filed a claim.

Mrs. Velasquez filed the last action ("Velasquez action") in the 23rd Judicial District Court for the Parish of St. James asserting state law tort claims against the cargo parties only. The cargo parties filed third-party petitions against the chartering parties. The chartering parties then removed the case to this Court under the Convention, asserting that the case was related to the ongoing London arbitrations. Mrs. Velasquez promptly filed the instant motion to remand the case to state court, arguing that the Convention Act does not support removal by the chartering parties.

After all four cases had found their way to this Court, the cargo parties filed an unopposed motion for leave to file a third-party complaint in the assignment action. See Consol.Rec.Doc. 68. The cargo par-

---

1. The Court proffers no opinion as to the volatility of the cargo but only notes that the argument has been raised previously.

2. The nexus to Convent, Louisiana is the reason why these actions have been file in or removed to this Court.

3. The Court is unaware of any pending actions filed by Mr. Detoyato's survivors.

4. For purposes of the further cases filed, the Caringal defendants have basically fallen into three separate groups: (1) the ship, the shipping company, and related parties, hereinaf-

ter referred to as "Karteria parties;" (2) the charterer, the sub-charterer, and related parties, hereinafter referred to as "chartering parties;" and (3) the manufacturer of the cargo and the stevedoring company, hereinafter referred to as the "cargo parties."

The Court's grouping of these parties is not meant to imply that the interests of the parties within each of the three groups are co-extensive. Rather, the Court has grouped the parties this way for ease and logic in reference to the matters currently pending.

ties, finding themselves as defendants in two separate suits claiming recovery for the death of Mr. Velasquez by both the Karteria parties (under the alleged full assignment) and Mrs. Velasquez, filed the third-party complaint for a declaratory judgment by this Court to determine which party is entitled to pursue the Velasquez death claims. Curiously, Mrs. Velasquez, having already filed the instant remand motion, did not oppose the third-party complaint, which brought her into federal court as a third-party defendant in the assignment case. The Court, seeing no opposition to the third-party complaint, granted the cargo parties leave to file it. *See* Consol.Rec.Doc. 65.

## II. ANALYSIS

### A. Removal under the Convention Act

The chartering parties, as third-party defendants, removed the Velasquez action under the Convention Act's removal provision, which provides the following:

Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award failing under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not ap-

pear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title [the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*,] any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

9 U.S.C. § 205.

This removal provision is clearly broader than the general removal statute codified at 28 U.S.C. § 1441. Most apparent, the Convention Act only requires that the removed action be "related to" an arbitration agreement or award under the Convention. Under the general removal statute, however, the removed case itself, or sometimes certain separate or independent claims, must either fall under a district court's diversity or federal question jurisdiction. Also, a defendant or defendants may remove a case under the Convention Act "at any time before the trial" whereas a defendant or defendants may remove under the general removal statute only within thirty (30) days of receiving the initial pleading setting forth the disputed claim for relief. *See* 28 U.S.C. § 1446(a). Furthermore, the Convention permits a defendant or defendants to remove on grounds stated in a petition for removal. For removal under the general statute, however, the well-pleaded complaint rule dictates that federal jurisdiction exists only when diversity of citizenship or a federal question appears on the face of a plaintiffs properly pleaded complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).[5]

---

**5.** The well-pleaded complaint rule is not absolute however.

[A]s an independent corollary to the well-pleaded complaint rule is the further principle that a plaintiff may not defeat removal by omitting to plead necessary federal questions.... If a court concludes that a plaintiff has artfully pleaded claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law

claim.... Although federal preemption is ordinarily a defense, [o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law.

*Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475–76, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998) (quotations and citations omitted).

As explained in the main text above, the Convention Act's removal provision does not require the reasons for removal to appear on

The breadth of the removal provision is in line with Congress's overall intent in ratifying the Convention and enacting the Convention Act to enforce it. "Congress ratified the Convention ... to secure for United States citizens predictable enforcement by foreign governments of certain arbitral awards made in this and other signatory nations.... To gain rights under the Convention, though, Congress had to guarantee enforcement of arbitral contracts and awards made pursuant to the Convention in United States courts." *McDermott International, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1207–08 (5th Cir.1991). Congress therefore provided a broad removal provision so that parties seeking to guarantee enforcement of arbitral contracts and awards could elect to escape the uncertainty of the laws of the fifty states for the comparative uniformity of federal law. *See id.* at 1209–12.

## B. Discussion

Assuming for purposes of argument that this case is related to an ongoing international arbitration, the Court must nevertheless remand it because the Court finds that the chartering parties, as third-party defendants, did not have any statutory authority to remove the case. The statute itself clearly provides that "the defendant or the defendants" may remove the case. 9 U.S.C. § 205. It does not provide for removal by any other party.

The Court has found no cases under the Convention Act removal provision in which a court considered whether a third-party defendant could remove. The phrase "the defendant or the defendants" in the Convention Act removal provision, however, "echoes the provision in 28 U.S.C. § 1441(a) [the general removal statute] that a civil action brought in a state court of which the federal district court has orig-

inal jurisdiction 'maybe removed by the defendant or the defendants' to federal court." *York Hannover Holding A.G. v. American Arbitration Ass'n*, 794 F.Supp. 118, 121 (S.D.N.Y.1992). "Cases construing 28 U.S.C. § 1441 are instructive in evaluating procedure under 9 U.S.C. § 205, particularly since the second sentence of the latter statute incorporates by reference procedures under the former." *Id.*

Many courts have considered whether a third-party defendant can stand as a "defendant" and thereby remove a case under the general removal statute. Those courts have generally concluded that subsection (a) of the statute limits the right of removal to defendants only and thereby precludes removal by third-party defendants. *See, e.g., Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107–08, 61 S.Ct. 868, 871–72, 85 L.Ed. 1214 (1941). There has been some dissent from this general conclusion, however, regarding removal by third-party defendants under subsection (c) of the statute. The language of subsection (c) of the statute does not limit the right of removal according to party status. Rather, it provides that

[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 [federal question jurisdiction] of this title is joined with one or more otherwise non-removable claims or causes of action, the entire c may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c). Nevertheless, most courts have limited section (c) to removal by defendants. *See, e.g., Lewis v. Windsor Door Co.*, 926 F.2d 729, 732–33 (8th Cir. 1991); *Thomas v. Shelton*, 740 F.2d 478, 487–88 (7th Cir.1984).

the face of the complaint but rather allows defendants to explain the reasons for removal in the removal petition. Therefore, the well-pleaded complaint rule and its independent

corollary, the artful pleading doctrine, have no bearing on cases removed under the Convention Act.

The Fifth Circuit, however, has adopted a minority position allowing third-party defendants to remove under subsection (c) under limited circumstances. The Fifth Circuit has held that a third-party demand for contractual indemnity is sufficient to remove the entire action from state court to federal court where the third party demand is separate and independent from the plaintiff's main state law cause of action. *See Carl Heck Engineers, Inc. v. Lafourche Parish Police Jury*, 622 F.2d 133, 135 (5th Cir.1980) (superseded by statute on other grounds). The Fifth Circuit later clarified that holding by making the following distinction: A third-party indemnity claim based on joint liability is not "separate and independent" from the plaintiffs main state law claim because it is based on the third-party's alleged negligence toward the plaintiff, but a third-party indemnity claim based on separate contractual obligations is "separate and independent" because it is based on an independent agreement. *See In re Wilson Industries, Inc.*, 886 F.2d 93, 96 (5th Cir. 1989). Therefore, the Fifth Circuit, in a minority position, allows a third-party defendant to remove under 28 U.S.C. § 1441(c) in very limited circumstances.

Those limited circumstances, however, are not analogous to the facts of the instant case. The third-party demands made by the cargo parties on the chartering parties are exclusively based on the alleged full or, in the alternative, joint liability of the chartering parties rather than any independent contractual obligations. *See* Third–Party Petitions, Rec. 00–1045, Doc. 1.[6] Therefore, the only exception to the general rule that third-party defendants cannot remove under the general removal statute does not apply here.

The chartering parties, in their joint memorandum in opposition to remand, argue for a broad reading of "the defendant or the defendants" phrase so as to include third-party defendants. They contend that *Acosta v. Master Maintenance & Construction, Inc.*, 52 F.Supp.2d 699 (M.D.La.1999), supports the proposition that the jurisprudence interpreting "the defendant or the defendants" phrase under the general removal statute has no application to the phrase's meaning in the Convention Act removal provision. *See id.* at 709. The *Acosta* court however made that observation in connection with an argument that the consent of all defendants in not required for removal under the Convention Act as it is under the general removal statute. *Acosta* did not consider the issue now before this Court.

More generally, the chartering parties argue that the two statutes have differing purposes for facilitating removal and thus should not be compared. The Court understands that argument but is left with the inescapable fact that the plain language of the Convention Act's removal provision limits the right of removal to "the defendant or the defendants." The Supreme Court in *Shamrock* specifically noted, and recounted persuasive legislative history in support of its conclusion, that Congress could have used a phrase other than "the defendant or the defendants" in the general removal statute if Congress in fact intended other parties to be allowed to remove cases from state to federal courts. *See* 313 U.S. at 106–08, 61 S.Ct. at 871–72. The same reasoning applies to the language in the Convention Act's removal provision: If Congress had intended to extend the right of removal to parties other than "the defendant or the defendants," it easily could have used a more expansive term.

In further support of a broad reading of the phrase "the defendant or the defendants", the chartering parties point to *York Hannover*, in which a district court permitted removal by an intervenor. However, *York Hannover* specifically looked to the practice under the general removal statute, which allows an inter-

---

**6.** While some of the parties may have pled contractual indemnity elsewhere, the cargo parties did not plead contractual indemnity in their third-party demands.

vening defendant, unlike a third-party defendant, to remove an action under the general removal statute if the intervening defendant can obtain the consent of the other defendants in the removal petition. *See* 794 F.Supp. 118, 121 (citing 1A *Moore's Federal Practice*, ¶ 0.167[11], at 517–19 (1991)).[7]

For these reasons, the Court concludes that, even if this action is "related to" an international arbitration agreement under the Convention, the chartering parties' removal of the Velasquez action was improper because third-party defendants cannot remove an action under the Convention Act's removal provision.

### C. General Observations

Although the Court must remand the Velasquez case, the Court does not find this result efficient or logical. All of the parties are here before this Court, and this Court will inevitably become intimately acquainted with the facts and circumstances of the M/V KARTERIA explosion that gave rise to the four now-pending actions and any other related future actions. The Court also understands the potential for conflicting decisions on whether the Karteria parties or Mrs. Velasquez retains the rights to pursue an action for the death of Mr. Velasquez, unless the state court stays its proceeding pending resolution of the third-party declaratory judgment action here. Regardless of these observations though, the Court is bound by the law cited and the conclusions drawn therefrom explained above.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Milagros Velasquez's Motion to Remand Civil Action 00–1045 (Consol.Rec.Doc.53) is hereby **GRANTED.** Accordingly, **IT IS ORDERED** that Civil Action 00–1045 is hereby **REMANDED** to

the 23rd Judicial District Court for the Parish of St. James, State of Louisiana.

---

7. Intervention, unlike third-party practice, sometimes works a total realignment of the original parties. *See generally* 13B Charles A. Wright & Arthur R. Miller & Edward H. Coo-

per, *Federal Practice and Procedure* § 3607 (2000). Therefore, the difference in removal practice makes sense.