### In re CONOCO EDC LITIGATION

### No. 00–001.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Nov. 16, 2000.

Joseph Jerome McKernan, Baton Rouge, LA, for Plaintiffs.

John A. Jeansonne, Jr., Jeansonne & Remondet, Lafayette, LA, for Defendants, Conoco EDC Litigation, movants.

*THIS DOCUMENT RELATES
TO ALL CASES*

TRIMBLE, District Judge.

*MEMORANDUM RULING*

Presently before the court is the Magistrate Judge's Report and Recommendation [doc 115] on the Plaintiffs' motions to remand [docs 3, 5–54, 56–57, 61, 63, 66–78, 90] the above-captioned consolidated cases (the "Conoco EDC cases") to Louisiana state court. Defendants Conoco, Inc. et al ("Conoco") oppose these motions in joint memoranda [doc 93, 95, 105, 106] on grounds that the United Nations' Convention on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter "the Convention," and, as ratified and its aims promulgated under the Convention Act of 1970, hereinafter, "the Convention

Act"),[1] controls removal in cases where there are related foreign arbitration agreements. Conoco premises its contention on the third-party claims made by Defendant Condea Vista against Conoco's insurers, some of which are foreign entities. Plaintiffs have replied to the Defendants' memoranda in a single document [doc 109], and all parties have been given ample opportunity to file additional and answering memoranda, and have done so.

Because we find that the insurance policies written by Conoco's insurers are not the foreign arbitral agreements contemplated to be adjudicated in federal courts by the removal requirements of 9 U.S.C. § 205, as those third-party contracts containing arbitration clauses are only a tangential focus of the Conoco EDC cases and are not the subject of or related to the Plaintiffs' claims, we conclude that this court does not have subject matter jurisdiction over the consolidated cases. Therefore, we find that the Plaintiffs' motions to remand the Conoco EDC cases to state court should be granted.

## I. FACTUAL AND PROCEDURAL HISTORY

This lawsuit stems from the joined claims of hundreds of unskilled laborers and others who contend that they were overexposed to ethylene dichloride (EDC) as a result of attempts to clean up and remediate the spill of EDC from a leaking underground pipeline which carried the chemical inland from barges at Defendant Conoco's docks in Westlake, Louisiana, to Conoco's Condea Vista facility.

Most of the lawsuits which presently constitute the Conoco EDC cases were filed in the Fourteenth Judicial District Court for the State of Louisiana in 1999. The Plaintiffs named Conoco, Inc. in the state civil actions, as well as other Defendants in many of the cases, including Condea Vista. Conoco then impleaded Condea

Vista, thereby making it a party to all the lawsuits. Condea Vista filed a cross-claim against Conoco, together with a third-party demand against four of Conoco's insurers.

Three of Conoco's four insurers were foreign entities, and on the day they were named third-party Defendants, two of the foreign entities—Danube Insurance, Ltd. and XL Insurance Company (the "Foreign Insurers")—removed the consolidated cases to federal court. Their notice of removal claimed that as the liability insurance policies issued to Conoco require arbitration in London for all coverage disputes, the state court actions to which they have been made parties were properly removable to federal court under § 205 of the Convention Act.

Plaintiffs object to removal on grounds that § 205 does not apply to their state law claims, as they are not parties to the arbitration agreements contained in the insurance policies between Conoco and its Foreign Insurers, and pray for remand of these cases to state court, or, in the alternative, for the state court claims to be severed and remanded to state court, in case this court finds removal was proper.

## II. LAW AND ANALYSIS

### A. Removal Pursuant to § 205 of the Convention Act

The analysis of this provision of the Convention Act, which affords removal where an action *relates to* an arbitration agreement, is clearly stated in the Magistrate Judge's Report and Recommendation, and we need reiterate only the bare bones of that determination:

To effect removal under § 205 of the Convention Act, it must be established that the Conoco EDC cases "relate to" an arbitration agreement. The Foreign Insurers removing this consolidated action

---

1. Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, U.S.-U.N., 21 U.S.T. 2517, as ratified by the United States by the Convention Act of 1970, 9 U.S.C. § 201 *et seq.* (2000).

claim that the phrase "relates to" must be interpreted broadly to allow removal where the legal action has the potential to affect arbitration agreements or awards, such as the arbitration agreements contained in their insurance policies with Conoco. The Foreign Insurers argue that "relates to" is intended to be "highly general," and means "to stand in some relation, to have bearing or concern, to pertain, refer, to bring into association with or connection with ...."[2] While this definition may suffice as the standard for determining a relationship between a claimant and a defendant, where the subject matter of the claim can fairly be said to relate to both the claimant and the defendant, absent privity between the claimant and a third party defendant, this definition of relate refers to a connection[3] that is far too tenuous, remote, and peripheral to create a right of removal in the third party defendant. *See, e.g., Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 at n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In the instant case, the nexus between the arbitration clauses in the insurance agreements between Conoco and its Foreign Insurers and the state cause of action brought by the Plaintiffs in the Conoco EDC cases is insufficient to trigger § 205 removal.

The Defendants argue further that they should be allowed to remove to federal court in order to effect the purposes of the Convention Act, which "insure[s] that there would be a uniform federal common law regarding international arbitral obligations." *Acosta v. Master Maintenance & Construction, Inc.,* 52 F.Supp.2d 699, 703–704 (1999) (citing *McDermott International v. Lloyds Underwriters of London,* citation omitted). Acosta contends that:

"The purpose of the Convention Act to foster international contracts is furthered by assuring a foreign business dealing with an American business, that without regard to which of the states where that business may be located, the foreign business will have access to that uniform body of federal law in the event of a dispute relating to an arbitration agreement.

When a foreign insurer issues a policy containing such a clause to an American business, it cannot predict what other party defendants it might be grouped with in future litigation. To condition the foreign insurer's access to the uniform body of federal law upon the whim of unknown and unknowable future party defendants is to completely thwart the very purposes of the Convention Act. Foreign businesses who understand that their access to federal courts can be denied by one local party defendant are likely to think carefully before contracting with an American business."

Acosta, at 708–709.

Acosta also quotes the McDermott decision, noting that the Convention Act has been construed as a liberal removal provision. (Acosta, at 703–704.) However, in its extended analysis of the Convention and the Convention Act, the McDermott court notes that:

"In 1970, Congress ratified the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ... to secure for United States citizens predictable enforcement by foreign governments of certain arbitral contracts and awards made in this and other signatory nations.... To gain rights under the Convention, though, Congress had to guarantee enforcement of arbitral contracts and awards made pursuant to the

**2.** *Barnett Bank v. Nelson,* 517 U.S. 25, 35–36, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996) ("highly general"); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97 n. 16, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (citing *Black's Law Dictionary* 1158 (5th ed.1979) for the definition of "relate").

**3.** Black's Law Dictionary 302 (6th ed., 1990) ("[T]he relations of a person with whom one is connected by marriage. In this sense, the relations of a wife are "connections" of her husband. The term is vague and indefinite.").

Convention in United States courts. . . .
So Congress promulgated the Convention Act in 1970 to establish procedures for our courts to implement the Convention."

McDermott International v. Lloyds Underwriters of London, 944 F.2d 1199 (5th Cir. 1991), *rehearing and rehearing en banc denied,* 947 F.2d 1489 (5th Cir.1991).

While the courts in Acosta and McDermott recognize that the Convention Act is intended to create predictability for foreign entities in their business dealings with American companies, the decisions also refer to America's purpose for signing on to the Convention through the Act: Congress enacted the Convention Act in order to bring American courts in line with those of other Convention signatories, *in order to secure for Americans the right to pursue arbitral awards due them from foreign entities and in foreign domains,* as mutuality is required to secure rights under the Convention. Neither the Convention nor the Convention Act suggests that we guaranty a federal forum to any and all foreign entities, nor that we create predictability for foreign entities at a disproportionate expense to Americans. The Convention Act does not encourage absolute and systematic defeat of state court jurisdiction by the incidental impleading of foreign parties, nor does it prevent the adjudication in state courts of claims tangentially touching on foreign parties, by allowing removal to federal court for every third-party agreement containing an arbitration clause. If we were to read such overbreadth into the Convention Act's removal provision, we would, in effect, be rewarding all parties who buy their policies from foreign insurers with virtual guarantees against state court litigation—an interpretation which could cause, among other adverse effects, a sharp decline in the fortunes of America's insurers. This cannot have been the intention of the lawmakers, nor we do find such an interpretation of the Convention Act or its intent lurking in the shadows of this case.

The Defendants also rely on the unpublished decision Ieyoub v. The American Tobacco Co., No. 97–1174 (W.D.La. Sept. 11, 1997), which identifies a four-factor test as outlined in the holding of Marathon Oil [4] as an appropriate means of analyzing whether the subject matter of an action relates to an arbitration agreement. As the Report and Recommendation makes clear, we do not know whether the test noted in Marathon Oil and outlined in Ieyoub can be relied on to determine if the subject matter of an action relates to an arbitration agreement, as the original decision was vacated for *en banc* review, and decisions so vacated have no precedential value.[5]

But even if the Marathon Oil test is deemed useful in such cases, in this case it fails to provide authority for removal. When applied to the facts of this case, in order to measure the relationship of the arbitration clauses in the Foreign Insurers' agreements with Conoco to the state tort cause of action, we find that the Plaintiffs' move to remand to state court is proper, as the Defendants have failed to muster even a scintilla of evidence that would satisfy any one of the four enumerated factors. The unskilled laborers and others who claim to have been injured by the EDC spill are not signatories to the insurance agreements between Conoco and the Foreign Insurers, have not sued the Foreign Insurers for their injuries, had no contractual relationship with the Foreign Insurers, and do not seek redress for wrongs suffered by Conoco, by the For-

---

**4.** *Marathon Oil Co. v. Ruhrgas, A.G.* 115 F.3d 315 (5th Cir.1997) *vacated on other grounds,* 145 F.3d 211 (5th Cir.1998).

**5.** *But see Acosta v. Master Maintenance & Construction, Inc.,* 52 F.Supp.2d 699, 706 (M.D.La.1999) ("Although Marathon was vacated on other grounds, this court considers the decision as persuasive and useful in its determination of when a state court action "relates to" an arbitration agreement.").

**344**

eign Insurers, or by any other signatories to the insurance agreements.

Lastly, as the relevant case law refers to removal authorized by the Foreign Sovereign Immunity Act, 28 U.S.C. §§ 1602–1611 (2000) ("FSIA"), we take judicial notice of the recent Fifth Circuit decision in *Delgado v. Shell Oil,* 231 F.3d 165 (5th Cir.2000), granting removal to a foreign impleaded third-party defendant. Delgado addresses the status required for removal under FSIA, and is readily distinguishable from the case at hand. In Delgado, the defendants were allowed to remove the case to federal court upon waiving sovereign immunity because the indirect majority shareholder of the removing defendant, Dead Sea Bromine Company, Ltd. ("Dead Sea"), is the State of Israel. Dead Sea, therefore, was found to have status as a foreign state under 28 U.S.C. § 1603(b)(2) ("an agency or instrumentality of a foreign state ... a majority of whose shares or other ownership interest is owned by a foreign state...."), and removal was proper under 28 U.S.C. § 1441(d), which authorizes original jurisdiction over civil actions against foreign states. 28 U.S.C. § 1330. In the instant case, neither of the Foreign Insurers is owned by the foreign state in which it resides—in fact, in the case of Danube, it is alleged that Conoco is at least a substantial part-owner of the insurer and/or vice versa—and therefore, has no status as a foreign state. In short, neither Danube nor XL have sovereign immunity to waive in order to accept federal jurisdiction.

B. Removal Pursuant to 28 U.S.C. § 1441(c)

As Defendants did not timely plead this basis for removal, as noted in the Magistrate Judge's Report and Recommendation, we make no ruling on the propriety of removal under 28 U.S.C. § 1441(c) in the instant case.

Therefore, for the foregoing reasons, and those enumerated in the Magistrate Judge's Report and Recommendation, the

Plaintiffs' Motion to Remand should be GRANTED, and the Clerk be directed to REMAND all the cases involved in the Conoco EDC Litigation to state court on the 10th calendar day from this date.